# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA JEAN JOHNSTON,<br><br>        Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 11-555<br><br>Judge Cathy Bissoon |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 9) will be denied, and Defendant's Motion for Summary Judgment (ECF No. 12) will be granted.

Patricia Jean Johnston ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act"). An Administrative Law Judge ("ALJ") denied benefits to Plaintiff following an administrative hearing on May 14, 2010. (R. at 11 – 43).[1] Following the denial of a request for review by the Appeals Council, Plaintiff filed the present action on April 29, 2011. (R. at 1 – 5; ECF No. 3). The parties' cross-Motions for Summary Judgment are now ripe for adjudication.

The ALJ determined that Plaintiff had the medically determinable severe impairments of bipolar disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), polysubstance abuse,

---

[1] Citations to ECF Nos. 6 through 6-10, the Record, *hereinafter*, "R. at __."

status post compression fracture to her back, status post fracture to her left foot, mild chronic obstructive pulmonary disease, and headaches. (R. at 13). The ALJ found Plaintiff disabled because of her drug and alcohol abuse ("DAA"). (R. at 15 – 17). However, in the absence of DAA, she had the functional capacity to perform light work allowing for Plaintiff to alternate between sitting and standing, allowing for ready access to a bathroom, not involving more than simple instructions, simple decision making, assembly line rate pace, changes in the work setting, crowds or groups of people, close interaction with co-workers and intensive supervision, and not requiring more than fourth grade mathematics skills or tenth grade reading skills. (R. at 18 – 19). Consistent with the testimony of the vocational expert, Plaintiff was able to work a significant number of jobs that existed in the national economy. (R. at 23 – 24). As a result, Plaintiff was found ineligible for benefits.

Plaintiff objects, arguing that the ALJ failed to apply the correct legal standard to determine whether DAA was material to Plaintiff's disability, and further failed to correctly analyze the impact of DAA upon Plaintiff's ability to work. (ECF No. 10 at 5 – 14).

In order to qualify for SSI, a claimant must prove to the Commissioner that he or she is incapable of engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner utilizes a five-step sequential analysis to evaluate whether a claimant has met this requirement. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

Assuming a claimant meets her burdens at Steps 1 through 4, the Commissioner examines at step 5 whether she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

In cases involving DAA, however, the Step 5 analysis takes on an additional component. The Act states that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Ambrosini v. Astrue*, 727 F. Supp.2d 414, 428 (W.D. Pa. 2010) (quoting 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J)). According to 20 C.F.R. §§ 404.1535 and 416.935, the "key factor" in making the above determination is whether a claimant would continue to be disabled if he or she ceased using drugs and/or alcohol. *Id.; see also Nomes v. Astrue*, 2010 WL 3155507, at *7-8 (W.D. Pa. 2010) (quoting *Warren v. Barnhart*, 2005 WL 1491012, at *10 (E.D. Pa. 2005)).

Thus, the side effects of DAA suffered by a claimant, and any resulting impact on other existing impairments, must be isolated so that the remaining limitations experienced by a claimant may be assessed. Emergency Message 96200 ("EM-96200") at qs. 25-28. The ALJ must assess the impact of the remaining limitations on a claimant's ability to work, and if it is not possible to distinguish between the limitations created by DAA and the claimant's other impairments, DAA is not a contributing factor material to disability. *Id*. This "materiality finding must be based on medical evidence, and not simply on pure speculation about the effects that drug and alcohol abuse have on a claimant's ability to work." *Ambrosini*, 727 F. Supp. 2d at 430 (citing *Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 699-706 (W.D. Pa. 2002)).

It is clear that, at Step 5 of the analysis, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy for a claimant, despite established functional limitations. In non-DAA cases, this burden is met by providing substantial evidence from the case record to support the conclusion that a claimant can work. In cases where a claimant's use of drugs or alcohol may be a material contributor of functional limitation,

3

regulation provides that the ALJ's burden is to provide substantial evidence from the record to show that – absent DAA-related functional limitations – a claimant is eligible for a significant number of jobs in the national economy. However, while an ALJ has the duty to develop a full and fair record, and provide substantial evidence to justify his or her final decision, it is important to emphasize that a claimant bears the ultimate burden of providing evidence as proof of disability. *Ventura v. Shalala*, 55 F. 3d 900, 902 (3d Cir. 1995); *Schwartz v. Halter*, 134 F. Supp. 2d 640, 656 (E.D. Pa. 2001) (citing *Hess v. Sec'y of Health, Ed. and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974)).

Here, the ALJ implicitly acknowledged that it was his duty to disentwine those limitations related solely to Plaintiff's DAA and those limitations stemming from Plaintiff's other impairments to determine whether the DAA was material to Plaintiff's disability, given the manner in which he analyzed the effects of Plaintiff's DAA on her ability to work. (R. at 19 – 23). This is fully in line with Plaintiff's argument – that the ALJ must provide substantial evidence to show that DAA is material. Even if the ALJ's reliance upon *Brown v. Apfel*, 192 F. 3d 492 (5th Cir. 1999), was erroneous, the error was harmless. The ALJ's materiality analysis comported with what is required by the regulations. The ALJ provided substantial evidence from the record to bolster his materiality finding, and separated those limitations attributable to Plaintiff's DAA from those attributable to the remainder of Plaintiff's impairments. The Commissioner's burden was, therefore, properly met. Plaintiff fails to illustrate how the substitution of particular language in the ALJ's decision in place of the ALJ's citation of *Brown* would have resulted in a different analysis or conclusion. *See Rutherford v. Barnhart*, 399 F. 3d 546, 553 (3d Cir. 2005) (error is harmless and does not justify remand where it would not affect outcome of case).

Turning to the ALJ's discussion of the facts, it is clear that the ALJ adequately supported his decision. Plaintiff would have the Court believe that the same level of functional limitation experienced by Plaintiff while engaging in DAA continued through her alleged period of sobriety beginning in August 2009, entitling her to disability benefits. As indicated by the ALJ, this simply was not the case.

The record shows that, as early as March 26, 2005, Plaintiff was noted to have a history of abusing crack cocaine and alcohol. (R. at 123). She informed a physician that she had never had a significant clean period in her life. (R. at 123). Plaintiff was not taking any psychiatric medications at that time. (R. at 125). In the time following this initial report, the record provided further, similar evidence in the form of visits to the emergency room, all of which were occasioned by DAA.

Plaintiff visited the emergency room in November 2007 for complaints of depression. (R. at 132 – 33). Plaintiff's hospitalization and depressive decline was precipitated, in part, by the cessation of her psychiatric medications. (R. at 134). Her situation was worsened by her cocaine and alcohol abuse. (R. at 136). Plaintiff also was using marijuana just prior to her hospitalization. (R. at 136). It was further noted that Plaintiff failed to seek follow-up care regarding previous similar hospital admissions with recommended outpatient care. (R. at 136). Plaintiff again was admitted at the emergency room in June 2008, due to suicidal ideation. (R. at 148). She had returned to cocaine and alcohol abuse just prior to her admission. (R. at 148, 156, 158). Yet, following the administration of psychiatric medication over the course of several days, as well as abstention from DAA, Plaintiff became increasingly cheerful, and her mental status was considered to be stable. (R. at 149). In spite of this improvement, Plaintiff again was admitted to a hospital psychiatric unit in August 2009 after an alleged assault.

5

(R. at 260, 266). She tested positive for cocaine use. (R. at 260, 266). Plaintiff admitted to using alcohol as well. (R. at 266).

Excluding hospitalizations, the impact of Plaintiff's DAA on her ability to function was evident. On August 17, 2009, it was noted by a physician at Southwestern Pennsylvania Human Services, Inc. ("SPHSI"), that after Plaintiff had relapsed in July 2009, she ceased taking her medications, she was missing doctor's appointments, and her suicidal ideation increased. (R. at 237). As a result, Plaintiff was not felt to be fit for work. (R. at 237). Previous notes from SPHSI in February, April, and May also identified relapses in cocaine, marijuana, and alcohol abuse, and corresponding declines in Plaintiff's mental status. (R. at 238 – 39, 246 – 49). When Plaintiff was not abusing drugs or alcohol, she attended therapy, adhered to her medication regimen, and she was noted to feel significantly better. (R. at 240 – 44). Plaintiff's therapist noted on September 29, 2009 that Plaintiff had been making progress until she relapsed into drug and alcohol abuse. (R. at 236).

When Plaintiff was not engaged in DAA, her limitations were not as severe. In October 2008, Plaintiff was evaluated by Dr. Kennedy. (R. at 171 – 78). Objective findings were not severe relative to Plaintiff's complaints. (R. at 171 – 78). Dr. Kennedy diagnosed PTSD and polysubstance dependence in early full remission. (R. at 171 – 78). While his prognosis was guarded, he indicated that Plaintiff had only slight to moderate limitations in all areas of functioning. (R. at 171 – 78). Moreover, if Plaintiff remained sober and continued counseling, he believed her prognosis would improve. (R. at 171 – 78). A mental RFC completed by Dr. Tarter in November 2008 indicated that Plaintiff was suffering from anxiety-related disorders and substance addition disorders, but that Plaintiff was only moderately to not significantly limited in all areas of functioning. (R. at 187 – 90).

By October 2, 2009, Plaintiff informed her psychiatrist, Dr. Sinu, that she was "feeling good" while on her medications. (R. at 284). She had refrained from DAA since August 2009. (R. at 284). At that time, Dr. Sinu observed that Plaintiff was well groomed, cooperative, exhibited normal motor behavior, had normal speech, was alert, maintained eye contact, had euthymic mood, had a full range of appropriate affect, had logical organized thoughts, had normal perceptions and thought content, denied suicidal ideation, had normal impulse control, was alert and oriented, had intact memory, had fair insight and judgment, and had average intelligence. (R. at 282). Plaintiff was keeping her appointments and taking her medications. (R. at 283). Her depression decreased and she was sleeping seven or eight hours per night. (R. at 283). Dr. Sinu characterized the report as "normal." (R. at 283).

Therapy notes from September 2009 through October 2009 by Plaintiff's therapist at the Staunton Clinic stated that while Plaintiff abstained from DAA, she was "doing markedly well." (R. at 287 – 89, 296 – 97). Plaintiff was taking care of herself, contributed to a stable, positive environment at the clinic, and was increasingly social. (R. at 287 – 89, 296 – 97). She reported that her medications worked well. (R. at 287 – 89, 296 – 97). Her GAF scores ranged from 54 to 58,[2] improving over time. (R. at 287 – 89, 296 – 97).

On January 28, 2010, Plaintiff stated that she was "doing fine" on her medications. (R. at 279). At the time, she was noted to regularly see a therapist for her psychological issues and substance abuse. (R. at 279). However, in a Mental Status Questionnaire from April 2010,

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.*

Plaintiff's psychiatrist and therapist from the Staunton Clinic indicated that Plaintiff would not be able to work more than four to seven hours per day, and could not engage in full-time work. (R. at 298 – 300). Plaintiff's psychological issues, in addition to her struggles with addiction, were Plaintiff's main impediments. (R. at 298 – 300). Plaintiff was noted to be in full remission from DAA. (R. at 298 – 300).

As explained by the ALJ, all of the above evidence illustrated marked improvement by Plaintiff when not involved in DAA. (R. at 15 – 16, 18 – 22). While Plaintiff believes that the ALJ improperly discredited the marked limitations findings within the Mental Status Questionnaire prepared by Dr. Sinu and her therapist from the Staunton Clinic – including a finding indicating that Plaintiff would not be able to work more than four to seven hours per day, maintain normal or appropriate relationships, or complete simple tasks in a regular work setting – as noted by the ALJ, the objective findings of record when Plaintiff was not engaging in DAA did not appear to support such marked limitations. (R. at 15 – 16, 18 – 22, 298 – 300). As such, the ALJ's decision was supported by substantial evidence.

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**ECF No. 9**) is **DENIED**, Defendant's Motion for Summary Judgment (**ECF No. 12**) is **GRANTED**, and the decision of the ALJ is **AFFIRMED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

March 30, 2012                              s\Cathy Bissoon
                                            Cathy Bissoon
                                            United States District Judge
cc (via ECF email notification):

All Counsel of Record